NOT FOR PUBLICATION

FILED

UNITED STATES COURT OF APPEALS

NOV 4 2025

FOR THE NINTH CIRCUIT

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

MALKEET LNU; SUNITA RANI LNU; JAIVIN LOHAN,

No. 24-4790

Agency Nos.
A241-692-761
A241-692-762
A241-692-763

Petitioners,

v.

PAMELA BONDI, Attorney General,

MEMORANDUM*

Respondent.

On Petition for Review of an Order of the
Board of Immigration Appeals

Argued and Submitted October 20, 2025
San Francisco, California

Before: PAEZ, BEA, and FORREST, Circuit Judges.

Petitioners Malkeet, Sunita Rani, and Jaivin Lohan petition for review of a

decision of the Board of Immigration Appeals ("BIA") dismissing an appeal from

an order of an Immigration Judge ("IJ") denying asylum, withholding of removal,

---

* This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

and protection under the Convention Against Torture ("CAT").[1] Malkeet is the primary asylum applicant and was the primary respondent before the IJ and the BIA; Sunita Rani and Jaivin Lohan are derivative beneficiaries of Malkeet's asylum application.

We review the BIA opinion and the portions of the IJ decision which the BIA incorporated as its own. *Kalulu v. Bondi*, 128 F.4th 1009, 1013 (9th Cir. 2024). We review factual findings, including adverse credibility determinations, for substantial evidence. *Kumar v. Garland*, 18 F.4th 1148, 1153 (9th Cir. 2021). We review de novo the BIA's resolution of legal questions. *Zheng v. Ashcroft*, 332 F.3d 1186, 1193–94 (9th Cir. 2003).

Exercising jurisdiction pursuant to 8 U.S.C. § 1252(a), we grant the petition for review and remand to the BIA for further proceedings consistent with this disposition.

**1.** The IJ denied the asylum and withholding claims primarily on the basis of an adverse credibility determination. The BIA affirmed the IJ's determination on four bases. Each of the four bases is infirm.

First, the agency relied on the fact that all the affidavits Malkeet submitted, as well as his own translated declaration, were notarized on the same day by the

---

[1] Malkeet and Sunita Rani do not have last names. Immigration officials added the acronym LNU (presumably for "Last Name Unknown") to their paperwork when they entered this country.

same notary in India. But the IJ erred by not addressing Malkeet's reasonable explanation for this purported irregularity. Where an applicant's explanation for a purported irregularity is "reasonable and plausible," "the agency 'must provide a specific and cogent reason for rejecting it.'" *Munyuh v. Garland*, 11 F.4th 750, 758 (9th Cir. 2021) (quoting *Rizk v. Holder*, 629 F.3d 1083, 1088 (9th Cir. 2011)).

Here, when asked why the same notary was responsible for his declaration and all the affidavits, Malkeet explained that his home, Pehwah, "is a really small city," with one or two notaries co-located with all the local attorneys. Moreover, Malkeet explained that his father, who helped him prepare the supporting documentation, arranged for the documents to be notarized together once they were all ready. Neither the IJ nor the BIA mentioned this reasonable explanation, let alone offered a "specific and cogent reason for rejecting it." *Id.* (quoting *Rizik*, 629 F.3d at 1088).

Second, the agency relied on the fact that two of Malkeet's supporting affidavits—from his father, Ram Kala, and the leader of his village's council, Jarnail Singh—share an identical statement. But the agency overlooked an obvious explanation for the identical statements—one affiant is quoting the other. Ram Kala attests: "Knowing the police is not going to help my son Malkeet, he no [sic] other option left but to leave from India with his family." And Jarnail Singh attests: "Knowing the police is not going to help my son Malkeet, he no [sic] other

option left but to leave from India with his family, *his father Ram Kalan told me on December 15th, 2022 at the market*." Petitioners' counsel offered this explanation before the IJ rendered his oral decision.[2]

The agency thus erred on at least two matters. As with the notarization irregularities, the agency failed to address and specifically reject Petitioners' reasonable explanation for the purported irregularity. *See Munyuh*, 11 F.4th at 758. And "the agency discounted the [declarations'] evidentiary value based on a clear misreading of them." *See Kalulu*, 128 F.4th at 1023 (remanding to reconsider misread documentary evidence as independent evidence of persecution). The agency's concern that Malkeet is not the "son" of Jarnail Singh suggests that both the IJ and BIA neglected to read, or grossly misread, Jarnail Singh's affidavit.

Third, the agency found that Malkeet's "testimony describing his alleged shoulder injury was inconsistent with the description of his injuries in his medical records." This purported inconsistency was not an appropriate basis for the adverse credibility determination because "[t]he IJ never asked for an explanation,

---

[2]     Petitioners' counsel failed to raise this explanation in his brief before this court and advanced a less persuasive argument. Given that this explanation appears on the face of the two affidavits and was raised before the IJ, we decline to ignore the full text of the relevant statements or to treat this explanation as waived. Although we do not normally consider arguments not raised in opening briefs, we may do so "if a failure to do so would result in manifest injustice." *Alcaraz v. I.N.S.*, 384 F.3d 1150, 1161 (9th Cir. 2004) (quoting *United States v. Ullah*, 976 F.2d 509, 514 (9th Cir. 1992)).

and [he] was required to." *Munyuh*, 11 F.4th at 762. Although Malkeet described his shoulder injuries twice, the IJ did not bring this purported inconsistency to Malkeet's attention during the hearing; rather, the first mention of it is in the IJ's oral decision.

Nor is the inconsistency supported by the record. *Kumar*, 18 F.4th at 1154 (granting petition as to adverse credibility determination based in part on two inconsistencies where "neither was, in fact, an inconsistency"). When first asked about his shoulder injury, Malkeet said he "injured" and experienced "swelling" on his right shoulder and that he "receive[d] scratches" "*on both shoulders*." Later on, Malkeet testified that he "got injury" on "both my shoulders." Looking at each description of his injuries in context, Malkeet consistently testified that both of his shoulders were hurt. Accordingly, Malkeet's testimony is also consistent with his medical records, which note that "both shoulder [sic] were injured."

Fourth, the agency relied on the fact that Malkeet testified to being a "worker" for the INLD Party, but in one of two relevant entries on his asylum application, he described himself as a "volunteer member." The agency did not give "a specific and cogent reason" for rejecting Malkeet's "reasonable and plausible explanation" for this discrepancy. *Munyuh*, 11 F.4th at 758 (quoting *Rizk*, 629 F.3d at 1088). Malkeet explained that, because he does not speak English, an interpreter spoke Hindi with him to fill out and review the form. He

further explained that in every other mention of his involvement with the INLD Party, Malkeet consistently referred to himself as a "worker," including one page below the offending entry on his asylum application, in his testimony, and in his written declaration.[3] Neither the IJ nor the BIA mentioned any of Petitioners' proffered explanations or explained why they were unpersuasive.

Accordingly, we remand to the BIA to reconsider whether the IJ's adverse credibility determination is supported by substantial evidence in light of the above infirmities and whether the other elements of Malkeet's asylum and withholding claims are satisfied.

**2.** After finding Malkeet not credible, the agency held that the documentary evidence was insufficient to independently establish past persecution or a well-founded fear of persecution. Because we grant the petition for review as to the adverse credibility determination, we need not address the propriety of the agency's independent evidence determinations. In the event the agency denies relief on remand, Malkeet may raise this issue in a future appellate court proceeding.

**3.** The agency denied Malkeet's CAT claim largely on the basis of its adverse credibility determination and its discrediting of the independent evidence.

---

[3]    The BIA also noted that Petitioners' brief on appeal referred to Malkeet as a "member." What matters, however, is Malkeet's testimony, not how his counsel described or characterized him in an appellate brief before the BIA.

Therefore, we grant the petition as to the CAT claim and remand for reconsideration alongside the new credibility determination and reconsideration of the independent evidence.

**PETITION GRANTED; REMANDED.**